GREEN

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

CIVIL DIVISION

FILED 2014 JUL 28 PM 1 50

BRENDA ... CLERK ...
BENTON ...

DELIDA GROOM and JAMES GROOM, husband and wife, individually and on behalf of their Minor Child, M.E.G.

PLAINTIFFS

VS.

NO. CV 14-1029-1

SALSARITA'S RESTAURANTS, LLC, a foreign Corporation; COMPASS GROUP USA, INC. d/b/a "Eurest Dining Services," a foreign corporation; and JOHN DOES 1-10

DEFENDANTS

## COMPLAINT

COME NOW the plaintiffs, Delida Groom and James Groom, individually and on behalf of their Minor Child, M.E.G., by and through their attorneys of record, THE LAW GROUP OF NORTHWEST ARKANSAS LLP, and MARLER CLARK, LLP, PS (pending admission pro hac vice), and allege as follows:

### I. PARTIES

1.1  At all times relevant, plaintiffs Delida Groom and James Groom were married, were the parents of Minor Child M.E.G, and lived in the State of Connecticut.

1.2  Separate defendant Salsarita's Restaurants, LLC ("Salsarita's"), is a corporation organized and existing under the laws of the State of Mississippi. At all times relevant hereto, Salsarita's owned and operated the retail restaurant called "Salsarita's" located in the Wal-Mart Home Office Café in Bentonville, Benton County, Arkansas. At all times relevant hereto,

Salsarita's was a manufacturer and seller of food and drink products at this location. Salsarita's jointly operated this restaurant in the Wal-Mart Home Office Café in Bentonville, Benton County, Arkansas with separate defendant Eurest.

1.3     Separate defendant, Compass Group USA, Inc. d/b/a "Eurest Dining Services" ("Eurest") is a corporation organized and existing under the laws of the State of Delaware. At all times relevant to this Complaint, Eurest was the foodservice management company that operated the Wal-Mart Home Office Café at the Wal-Mart Home Office in Bentonville, Benton County, Arkansas. At all times relevant hereto, Eurest operated and controlled all foodservice operations at the Wal-Mart Home Office Café, including the restaurant called Salsarita's, owned and jointly operated with separate defendant Salsarita's.

1.4     Upon information and belief, Defendants John Does 1-10 are entities who participated in the manufacture, service, and/or sale of the contaminated food product that was the proximate cause of the plaintiffs' injuries, and whose identities are not known to the plaintiffs at this time. The plaintiffs will seek leave of the Court to amend this Complaint at such time that the identities of these parties become known.

## II.     JURISDICTION AND VENUE

2.1     This court is vested with original jurisdiction over the defendants, pursuant to A.C.A. § 16-13-201, because the defendants are corporations doing business within the State of Arkansas.

2.2     The venue of this action is proper in Benton County, pursuant to A.C.A. § 16-55-213, because the defendants operate here, and Benton County is where a substantial portion of the events, acts, and omissions giving rise to this claim occurred. The defendants are thus deemed to be residents of Benton County for venue purposes.

## III. GENERAL ALLEGATIONS

### The Outbreak

3.1  In late June 2014, the Arkansas State Health Department announced that an outbreak of Shigellosis had occurred at the Wal-Mart Home Office in Bentonville, Arkansas. At or about the time that the Arkansas State Health Department announced the outbreak, the Salsarita's restaurant at the Wal-Mart Home Office Café was closed. The health department has stated that 275 cases of Shigellosis have occurred in nine states as part of this outbreak.

3.2  During their investigation of the Shigellosis outbreak at Wal-Mart's Home Office Café, health officials conducted an inspection of the Salsarita's restaurant located there, which is where the investigation results indicated the outbreak had occurred. During a June 18, 2014 inspection, inspectors found nine violations. Of the nine violations, five were marked priority, meaning they were concerns that needed to be fixed immediately. Some violations included: employees not washing their hands; and employees touching ready-to-eat food without wearing gloves. The inspection report also indicated that juices from raw chicken were found dripping on bottled drinks.

3.3  A second inspection occurred on June 23, 2014. During this follow-up inspection of the Salsarita's restaurant, inspectors found seven violations, some of which were repeat violations from the initial inspection.

### Delida Groom's and M.E.G's Shigellosis Illnesses

3.4  Delida and James Groom live in Connecticut. Mr. Groom is active duty with the U.S. Navy. They have a 1-year-old daughter, M.E.G, who resides with them in Connecticut.

3.5  In June 2014, Mrs. Groom and her daughter traveled to Bentonville, Arkansas to visit Mrs. Groom's parents. While in Arkansas, on Friday, June 13, 2014, Mrs. Groom attended

a luncheon that included multiple foods from the Wal-Mart Home Office Café, including chips, salsa, and other items produced at the Salsarita's restaurant located in the Café.

3.6 The following evening, June 14, 2014, Mrs. Groom began to feel slightly fevered, light-headed, and nauseated. The symptoms continued throughout the night.

3.7 On June 15, 2014, Mrs. Groom developed severe diarrhea, abdominal cramps, and a high fever.

3.8 On June 16, 2014, Mrs. Groom's fever continued to rise, and the other symptoms continued unabated. This prompted her to go the Mercy Urgent Care in Rogers, Benton County, Arkansas. Once she arrived, Mrs. Groom learned that she could not be seen for approximately five hours. As a result, she left the urgent care facility.

3.9 Mrs. Groom and her daughter were scheduled to return home on June 17, 2014. Unaware of the increasingly dire nature of her health crisis, Mrs. Groom elected to make the trip, despite her symptoms. Her mother agreed to make the long drive back to Connecticut with Mrs. Groom and her daughter.

3.10 During the first day of the trip home, Mrs. Groom's symptoms caused them to have to stop frequently at rest areas, gas stations, and other facilities with restrooms. Early in the day she noticed that her bouts of diarrhea had turned bloody.

3.11 The evening of June 17, 2014, Mrs. Groom's episodes of diarrhea contained almost pure blood and no stool. At this point, she and her daughter and mother were in the state of Indiana and were frightened and did not know what to do. Mr. Groom was on active duty with the Navy and had learned of his wife's dire circumstances and was frightened for the well-being of his wife and daughter.

3.12 Ultimately, Mrs. Groom decided to call her primary physician in Connecticut, and she received instructions to go to the nearest emergency hospital. Thus, early the next morning, June 18, 2014, Mrs. Groom was seen at Hancock Regional Hospital in Greenefield, Indiana.

3.13 In the emergency department at Hancock Regional, Mrs. Groom was diagnosed with hypokalemia, which is a potassium deficiency caused by her immense gastrointestinal losses, as well as a dangerously low blood pressure. Her fever also had continued to rise. It was increasingly clear that the Shigella bacteria Mrs. Groom consumed on the contaminated food items manufactured and sold by the defendants had found its way into her bloodstream, causing her to develop sepsis. Mrs. Groom was experiencing septic shock.

3.14 Mrs. Groom was admitted to the intensive care unit and quarantined, due to her likely infectious state. Upon admission, it was also found that Mrs. Groom's rectum had prolapsed, again due to the repeated, violent bouts of diarrhea that she had suffered for multiple days. She was in severe pain and was medicated with morphine.

3.15 Meanwhile, Mrs. Groom's mother kept Mr. Groom apprised of his wife's declining health. Mrs. Groom's mother obtained a hotel room close to the hospital, where she stayed with Mrs. Groom's 1-year-old daughter, who had also begun to suffer from gastrointestinal illness.

3.16 Mrs. Groom remained in the intensive care unit through the afternoon of June 20, 2014. During her stay, she submitted a stool sample that tested positive for Shigella. She ultimately was discharged against the advice of her doctors, who felt that she was not well enough to continue the long journey home. Nevertheless, Mrs. Groom needed to get home to her family, and her young daughter needed to be home as well. Thus, Mrs. Groom and her mother and daughter continued the drive home, arriving on or about June 21, 2014.

3.17 During Mrs. Groom's stay in the emergency room at Hancock Regional hospital, her daughter M.E.G. began to experience gastrointestinal illness as well. Like her mother, M.E.G. had suffered from diarrhea and was generally ill-appearing during the drive from Arkansas to Connecticut. In addition to battling her own symptoms, Mrs. Groom was highly concerned for her daughter as well. On July 22, 2014, M.E.G. was admitted to the emergency department in Connecticut, where she was rehydrated with intravenous fluids and was treated with antibiotics. M.E.G. ultimately recovered from her illness without further treatment. She was secondarily infected with Shigella due to close contact with her mother.

3.18 Mrs. Groom continues to suffer from the effects of her severe Shigellosis illness. Additionally, pursuant to instruction from Hancock Regional hospital, Mrs. Groom continued to receive treatment on Mr. Groom's military base through June 23, 2014. The treatment included, but was not limited to, blood work, antibiotics, various medications, and IV therapy. Her gastrointestinal function remains impaired and highly uncomfortable. Also, approximately 3 weeks after the onset of her initial gastrointestinal symptoms, Mrs. Groom developed pain and swelling in multiple joints throughout her body, including both knees, ankles, and hands, her right elbow, and her neck. This condition is known as reactive arthritis. All of these medical problems were proximately caused by the Shigellosis infection.

3.19 Further, at the time that she tested positive for Shigella, Mrs. Groom learned from public health officials that she could not care for children or family members due to her infectious state. This meant that she, a wife and mother, could not cook meals for her family or participate in the many activities of daily living that she had always enjoyed. Nor could she provide nanny or babysitting services for a local family that had employed her to do so. During the time that she was positive for Shigella infection, all of the household activities that she could

not do had to be done by her husband, who also worked full time as an active duty diver for the U.S. Navy. Mrs. Groom continues to be limited in her physical activity due to the ongoing effects of her illness, including the reactive arthritis.

### IV. CAUSES OF ACTION

#### Strict Liability against all Defendants—Count I

4.1     At all times relevant hereto, the defendants manufactured, distributed, and/or sold the adulterated food product that is the subject of this action.

4.2.    The adulterated food product that the defendants manufactured, distributed, and/or sold was, at the time it left each separate defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained, or was contaminated by, Shigella bacteria, which is dangerous to human health.

4.3     The adulterated food product that the defendants manufactured, distributed, and/or sold was delivered to plaintiff Delida Groom without any change in its defective condition. The adulterated food product that the defendants manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by plaintiff Delida Groom. Mrs. Groom's close contact with her minor daughter, M.E.G., caused M.E.G. to become infected as well.

4.4     Plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendants manufactured, distributed, and/or sold.

#### Breach of Warranty against all Defendants—Count II

4.7     Defendants are liable to the plaintiffs for breaching express and implied warranties that they made regarding the adulterated food product that caused plaintiffs' illness

and injuries. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use. Specifically, the defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the subject food product was fit for human consumption and not otherwise adulterated or injurious to health.

4.8  Plaintiffs allege that the *Shigella*-contaminated food that defendants manufactured, distributed, and/or sold would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

4.9  Plaintiffs allege that the *Shigella*-contaminated food that defendants manufactured, distributed, and/or sold was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

4.10  As a direct and proximate result of the defendants' breaches of warranty, as set forth above, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

### Negligence against all Defendants—Count III

4.11  Defendants designed, manufactured, distributed, and sold food products that were contaminated by Shigella, a harmful pathogen.

4.12  Defendants owed a duty to all persons who consumed their food products, including the plaintiff Delida Groom and her minor daughter, M.E.G., to manufacture and sell food that was safe to eat, that was not adulterated with harmful pathogens, like *Shigella*, and that was not in violation of applicable food and safety regulations.

4.13  Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of their food

products. Defendants' manufacture, distribution, and sale of the Shigella-contaminated food products that caused Plaintiffs' injuries was in breach of the duties imposed upon them under said statutory and regulatory provisions. Delida Groom and M.E.G. were among the class of persons designed to be protected by these statutes and regulations pertaining to the manufacture, distribution, storage, and sale of similar food products. As a result, Defendants' actions in manufacturing, distributing, and selling the subject adulterated food products constituted negligence per se, for which Defendants are liable to the plaintiffs.

4.14   Defendants breached the several duties owed to consumers of their food products, including Delida Groom and M.E.G., by committing the following acts and omissions of negligence:

4.14.1   Failed to adequately maintain or monitor the sanitary conditions of their products, premises, equipment, and employees, and the products, premises, equipment, and employees of other entities involved in the manufacture, preparation, service, or sale of the subject adulterated food products;

4.14.2   Failed to properly operate their facilities and equipment in a safe, clean, and sanitary manner;

4.14.3   Failed to apply their food safety policies and procedures to ensure the safety and sanitary conditions of their food products, premises, and employees;

4.14.4   Failed to apply food safety policies and procedures that met industry standards for the safe and sanitary production of food products, and the safety and sanitary condition of their premises and employees;

4.14.5   Failed to prevent the transmission of *Shigella* to consumers of their food products;

4.14.6   Failed to properly train their employees and agents how to prevent the transmission of *Shigella* on their premises, from their facility or equipment, or in their food products;

4.14.7   Failed to properly supervise their employees and agents to prevent the transmission of *Shigella* on their premises, from their facility or equipment, or in their food products.

4.14.8   Failed to take reasonable steps and measures to monitor the individuals involved in the preparation, service, and sale of the subject food products.

4.15   As a direct and proximate result of Defendants' acts and omissions of negligence, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

## V.   DAMAGES

5.1   The plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of each of the defendants, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; loss of income, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

5.2   The plaintiff James Groom is additionally entitled to recover damages for the loss of spousal consortium that resulted from his individual injuries caused by each of the defendants' wrongful conduct.

## VI.   JURY DEMAND

6.1   The plaintiffs hereby demand a jury trial.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for judgment against the defendants as follows:

A.   Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiffs as a result of the defendants' conduct;

B.   Awarding plaintiffs their reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

C.   Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: July 28, 2014.

Respectfully submitted,

_____
K.C. Dupps Tucker (#07288)
Gary V. Weeks (#88013)
THE LAW GROUP OF NORTHWEST ARKANSAS LLP
1830 Shelby Lane
Fayetteville, AR 72704
479-316-3760
844-325-6603 Facsimile
gary.weeks@lawgroupnwa.com
kc.tucker@lawgroupnwa.com

– and –

R. Drew Falkenstein, WSBA #33401
*(Pending Pro Hac Vice)*
Marler Clark, LLP PS
1301 2nd Avenue, Suite 2800
Seattle, WA 98101
Telephone: 206-346-1888
Facsimile: 206-346-1898
*Attorneys for Plaintiffs*